DICKINSON W. ORR, administrator, plaintiff in error, vs. TRAVIS HUFF, defendant in error.

Motion for a new trial, on the ground, that the verdict was against the evidence, and motion refused. There was much evidence in favor of the verdict.

*Held*, that the refusal of the motion was not to be disturbed.

Assumpsit, in Macon Superior Court. Tried before Judge LAMAR, at September Term, 1858.

This was an action by Travis Huff, against Dickinson W. Orr, administrator of Andrew J. Orr, deceased, to recover damages for the breach of warranty, of the soundness of a slave sold by the intestate, in his lifetime, to plaintiff.

The following is the bill of sale, containing the warranty, for the breach of which the action is brought:

" GEORGIA, BIBB COUNTY.

April 13th, 1850.

Received from Travis Huff, four hundred dollars, in full payment for a negro girl named Fanny, about nine years of age. I warrant said girl sound in body and mind. I also warrant and defend the title against all claims whatever.

(Signed)                                        A. J. ORR."

The declaration alleged, that said slave was, at the time of said sale, unsound in mind and body, and became an

idiot, and of no use or value to plaintiff, but a burden and expense; and there was annexed, a bill of particulars, of the money paid out to physicians, and for burial expenses, amounting to sixty dollars.   Damages laid at one thousand dollars.

The defendant pleaded, first, the general issue; second, the statute of limitations; third, a special plea, that there was no breach of the warranty contained in said bill of sale.

Upon the trial on the appeal, plaintiff offered and read in evidence, the bill of sale above set out.

It was admitted by the defendant, that plaintiff commenced a suit, for the same cause of action, against his intestate, 20th July, 1855, but the writ was not served before his death, which occurred 25th July, 1855.   (This action was commenced 7th February, 1857.)

Plaintiff then read the depositions of *Doctor Henry Saunders*, taken by commission, who, in substance, proved that he examined the girl in February or March, 1854; that she was affected with chorea, or St. Vitus dance; was so much reduced as to be scarcely able to stand; made such an examination as satisfied him as to her condition.   From the shape of her head, and idiotic expression of countenance, and general appearance, thinks she must have been diseased from childhood; was not developed as a child of her age ought to have been.

*Doctor Gabriel Harrison*, examined by commission, testified, in substance, that he was at plaintiff's in June, 1854, and was requested by him, to see the girl, and examine her, and give his professional opinion as to her condition; examined her, and found that she was idiotic; was almost entirely senseless; could not get her to speak three words together correctly, or intelligently; say yes for no, and *vice versa*; told plaintiff it was almost a hopeless case, as she was having epileptic fits regularly; treated her for about eight months, and then took her to his own house, where she remained fifteen or twenty days, and gradually got worse;

while at witness's house had from seven to eight fits a day; examined her carefully every day, while at his house; treated her case actively; nothing mitigated her symptoms, in the least; nothing very striking in the conformation of her head, except, that it was very small. When witness first saw her, she had a very simple expression of countenance, and stated to Mr. Huff that she had no sense; this was before witness examined her. Cannot speak positively, but gives it as his opinion, that the girl's mind must have been impaired before the 13th April, 1850; from the general deranged condition of her whole system, and the frequent recurrence of the paroxysms, her disease was one of long standing; she died soon after leaving his (witness's) house, a confirmed idiot.

*Elizabeth Huff*, a daughter of the plaintiff, examined by commission, testified that she knew Fanny; had repeated occasions and opportunities for examining her as to the soundness of her mind; she was idiotic; as often answered yes for no, and no for yes, and do the contrary of what she was bid to do. In all she did and said, she showed an entire want of sense. From these, and many other circumstances, is of opinion that she was unsound in mind on the 13th April, 1850.

*William Huff*, a son of plaintiff, swore, that he was living at home when his father purchased the negro; had charge of his father's business; she was put to work immediately, and witness worked with her, and soon discovered that she was very dull, and afterwards that she was of unsound mind; she gradually grew worse as long as witness remained; left home in 1853; thought she was older than described in the bill of sale; never grew much after his father bought her; won't say she was a confirmed idiot when he left his father, but she was worthless; did not comprehend what was said to her; never considered her sound in mind after she was put to work, and had no sufficient opportunity of judging before.

*Cross examined:* Plaintiff purchased a negro woman and two children of A. J. Orr, in 1853 or 1854; a tender back of the girl, Fanny, was made in 1854, or 1855; knows of no tender before that time. Plaintiff often saw Mr. Orr from the time he purchased Fanny, up to 1855; don't know that he ever made any complaint to him about her unsoundness before 1854 or 1855; did not regard the girl as having entirely lost her mind up to 1853, when he (witness) left home; she was put to work in 1850 or 1851. No physician was called to her while witness remained at his father's; she was worse in 1851 than in 1850, and gradually grew worse.

Here plaintiff closed.

*Dr. Arthur M. Pitts,* sworn by defendant, testified in substance, that he was a regular physician, but not now practicing; had practiced for nine years. His professional opinion was, that it was " utterly impossible for any physician, in 1854, to have told what was the condition of a girl nine years old, in April, 1850. The disease as described by Doctors Harrison and Saunders, generally comes on in females, at the age of puberty; that is, from 12 to 15 years of age."

*Cross examined:* The disease as described by Doctors Harrison and Saunders, is a very dangerous one, and does not generally, at first, attack the mind, but has known cases to attack the mind.

*D. W. Orr,* administrator, and defendant, having paid all cost in the case, and a sufficient amount to cover all that might accrue, was tendered as a witness, and on his *voir dire* stating that he had no individual or pecuniary interest in the final result of the suit, was sworn in chief—testified that he knew Fanny; he purchased her for A. J. Orr, in Virginia, about four months before plaintiff bought her; saw her frequently before the sale. Witness has bought and sold negroes, several hundred; hardly ever made a mistake in the soundness of one; when he purchased Fanny for A. J. Orr, made a careful examination of her, by talking with her a long time, and made a rigid examination of her

person; saw nothing to arouse a suspicion that she was defective in her mind; she was as smart as other negroes of her age; conversed frequently with her, up to the day of the sale to plaintiff, and never saw any circumstance to show that her mind was affected; she was as smart as eight out of ten of her age; never heard of any complaint about her being unsound until 1855. Plaintiff saw A. J. Orr, often after the purchase, before 1855. Witness says, that after he has examined and purchased a negro, and pronounced him or her sound, would release a seller from his warranty for five dollars; is perfectly satisfied that the girl, Fanny, was sound in mind and body, at the time she was sold to plaintiff.

*Cross examined.*—Has been mistaken in the soundness of a negro after an examination; was sometimes a partner of A. J. Orr, in the purchase and sale of negroes, both before and after the sale of Fanny to plaintiff, but had no interest whatever in her; sometimes bought on his own account, and sometimes A. J. Orr bought on his account. Bought the girl Fanny, with the funds of A. J. Orr, and was not interested in her purchase; was not then in the trade.

Defendant here closed. The Court charged the jury, to which there was no exception, and the jury found for the plaintiff four hundred dollars, and interest thereon from the 13th April, 1850. Whereupon, defendant moved for a new trial, upon the grounds, that the verdict was contrary to law, contrary to evidence, and strongly and decidedly against the evidence, and the weight of evidence.

The Court refused to grant a new trial, and to this decision defendant excepted.

POE & GRIER; S. & T. G. HALL, for plaintiff in error.

STUBBS & HILL, *contra.*

*By the Court.*—BENNING J. delivering the opinion.

The Court below refused to grant a new trial. Ought this

Court to disturb that decision? We think not. We cannot say, that the verdict was decidedly and strongly against the weight of the evidence. There was much evidence for the verdict; one great fact was, that the child never grew any after the sale; but even, if the verdict was decidedly and strongly against the weight of the evidence, it would not follow, of necessity, that a new trial ought to be granted. Even, in such a case, the Act of 1854, merely confers the *power*, in the exercise of a sound discretion, to grant a new trial; the act does not impose the duty to grant a new trial.

Judgment affirmed.